UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK D. HASTINGS, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:12-cv-01269-JMS-DKL |
| | ) | |
| SMC CORPORATION OF AMERICA, KELLEY | ) | |
| STACEY, AND FRANCISCO RIVERA, | ) | |
| *Defendants*. | ) | |

**ORDER**[1]

Plaintiff Mark Hastings brought this suit against his former employer, Defendant SMC Corporation of America ("SMC"), as well as SMC employees Kelley Stacey and Francisco Rivera. Mr. Hastings alleges that Defendants discriminated against him because of his race (Caucasian) and age (60), and also sets forth several state law claims. [Filing No. 1.] Presently pending before the Court is Defendants' Motion for Summary Judgment, seeking summary judgment on all of Mr. Hastings' claims. [Filing No. 28.] In response to Defendants' motion, Mr. Hastings abandoned all of his claims except for his age discrimination claim made pursuant to the Age Discrimination in Employment Act ("ADEA"). [Filing No. 31, at ECF p. 2.] Accordingly, the individual Defendants, Kelley Stacey and Francisco Rivera are entitled to judgment in their favor. For the reasons that follow, the Court concludes that summary judgment in Defendants' favor is warranted on Mr. Hastings' ADEA claim as well. Therefore, Defendants' Motion for Summary Judgment is **GRANTED**. [Filing No. 28.]

---

[1] As part of the Court's pilot program regarding hyperlinking in Court filings, this Order contains hyperlinks to documents previously filed in this case, and to legal authority. Instead of the citation format "dkt. __ at __" used previously in this case, the Court now uses "Filing No. __, at ECF p. __" as its citation format.

# I.
## PROCEDURAL STANDARDS AND COMPLIANCE

### A.     Summary Judgment Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

**B.      Mr. Hastings' Response Brief Failed to Comply with the Local Rules**

Before setting forth the factual background, the Court must first address Defendants' argument regarding Mr. Hastings' noncompliance with the Local Rules. Defendants rightly point out two ways in which Mr. Hastings' brief failed to comply with the Local Rules. [Filing No. 35, at ECF p. 3 n. 1.] First, although Mr. Hastings properly included a "Statement of Material Facts in Dispute" section of his brief, the section is that only in name. Pursuant to Local Rule 56-1(b), this section must "identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." Local Rule 56-1(b). Mr. Hastings' section, although properly titled, does not do this. Instead, it

is a ten-page section setting forth all the facts of the case without identifying those that are potentially determinative.  [*See* Filing No. 31, at ECF 2-11.]  The consequence of Mr. Hastings' noncompliance with Local Rule 56-1(b) is that he could well be found to concede Defendants' version of events.  *See Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 n.1 (7th Cir. 2011).  And Defendants' version of events demonstrates that they did not discriminate against Mr. Hastings due to his age and thus are entitled to summary judgment on his ADEA claim.  *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (noting that the Seventh Circuit has "repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.").

Second, Defendants correctly maintain that Mr. Hastings failed to comply with Local Rule 56-1(e).  [Filing No. 35, at ECF  p. 3 n. 1.]  This rule requires both parties to "support *each fact* the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."  Local Rule 56-1(e) (emphasis added).  The "Argument" section of Mr. Hastings' brief contains numerous factual assertions, almost none of which are supported by citations to the record.  This is a clear violation of Local Rule 56-1(e), and could result in the Court declining to consider these factual assertions.

Despite clear authority permitting it to do so, *see, e.g.*, *Waldridge*, 24 F.3d at 922, the Court will not rest its decision solely on Mr. Hastings' concession of Defendants' version of the facts.  However, in order to facilitate the Court's review of the merits of Mr. Hastings' claim, the Court attempted to match the factual assertions in the "Argument" section of Mr. Hastings' brief

with those from earlier in his brief where the factual assertions were supported with citations to the record. And to the extent possible, the Court identified the facts Mr. Hastings maintains preclude summary judgment.

## II.
### BACKGROUND

Consistent with the standard of review, and despite Mr. Hastings' noncompliance with the Local Rules detailed above, the Court draws the following factual background from the undisputed evidence and, if certain evidence is disputed, views that evidence in the light most favorable to the non-moving party, Mr. Hastings.

Mr. Hastings began working for SMC on June 6, 2005, as the manager of distribution. [Filing No. 32-1, at ECF p. 2.] On a scale of one (worst) to five (best), Mr. Hastings received overall performance ratings of 4.045 and 3.46 for the first two years of his employment, which correspond to "Exceeds Expectation" and "Meets Expectation," respectively. [Filing No. 32-1, at ECF p. 6-11.] However, in February 2007, he was demoted to supervisor in the logistics department. [Filing No. 32-1, at ECF p. 3.] SMC did not explicitly state that the demotion was due to poor performance. [Filing No. 32-1, at ECF p. 31.] Although Mr. Hastings attested in his affidavit that he "was not demoted for poor performance nor rules violations," [Filing No. 32-1, at ECF p. 3], he admitted during his deposition that his demotion was related to his performance and had no reason to believe it was because of his age, [Filing No. 30-1, at ECF p. 6].[2]

In his new position, Mr. Hastings reported to Jim Lippold, who replaced Mr. Hastings as the manager of distribution. [Filing No. 32-1, at ECF p. 31.] Mr. Lippold, therefore, prepared Mr. Hastings' subsequent performance reviews. [Filing No. 32-1, at ECF p. 12-30.] During the

---

[2] In instances where Mr. Hastings' deposition testimony conflicts with the statements made in his affidavit, the Court relies solely on Mr. Hastings' deposition. *See Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006).

first year in his new position, Mr. Hastings received an overall performance rating of 3.31. [Filing No. 32-1, at ECF p. 14.] In 2008 SMC changed its employee performance evaluation system, and, pursuant to the new system, Mr. Hastings consistently received overall performance ratings of "Fully Satisfactory." [Filing No. 32-1, at ECF p. 15-30.] In 2011, Mr. Hastings laterally transitioned to supervisor of the cycle count department. [Filing No. 30-1, at ECF p. 8-9.]

During the relevant time, Defendant Kelly Stacy served as SMC's director of operations, where she oversaw all SMC operations in North America. [Filing No. 30-2, at ECF p. 2.] Sometime in 2011 an SMC director informed Ms. Stacy of problems at the SMC warehouse where Mr. Hastings worked. [Filing No. 30-2, at ECF p. 5.] Among other things, she was informed that college interns "were being targeted" for unfair treatment by several supervisors, including Mr. Hastings. [Filing No. 30-2, at ECF p. 5-6.] Ms. Stacy was also told that Colby Christie, a college intern at SMC, had been issued a written warning for being late even though a supervisor knew that he was not late. [Filing No. 30-2, at ECF p. 5-6.] Lastly, Ms. Stacy came to believe that her son Dalton, who was also a college intern at the warehouse, had been falsely accused of entering the wrong side of the warehouse by Mr. Hastings, Mr. Lippold, and fellow SMC supervisors Jim Harris and Jason Arney. [Filing No. 30-2, at ECF p. 8-9.]

Based on these events, Ms. Stacy thought something "was broken" at the SMC warehouse, so she went to the warehouse to investigate. [Filing No. 30-2, at ECF p. 12.] As part of her investigation, Ms. Stacy interviewed nineteen employees from the warehouse and took written notes reflecting the employees' statements. [Filing No. 30-2, at ECF p. 12.] During these interviews, among other things, she was told of an incident involving SMC college interns Tyler Charles, who is Caucasian, and Mr. Christie, who is African American. [Filing No. 30-2,

- 6 -

at ECF p. 4-5.] Mr. Charles informed Ms. Stacy that SMC supervisor Jim Harris asked him, in the presence of Mr. Hastings, "Hey, where's your monkey today," after which Mr. Hastings said only, "Wow, did he just say that?" [Filing No. 30-2, at ECF p. 5.] Ms. Stacy believed that Mr. Harris was referring to Ms. Christie as a monkey due to his race and that Mr. Hastings was complicit in that "[h]e didn't do anything about it." [Filing No. 30-2, at ECF p. 4.] Mr. Hastings, however, attests that he "understood [Mr.] Harris to be making a bad joke about [Mr.] Charles' shirt" and was not at all "referring to [Mr.] Christ[ie]." [Filing No. 32-1, at ECF p. 4-5.] Further specifics of these interviews are discussed below as necessary, but Mr. Hastings himself acknowledged the interviews revealed that several of the employees were dissatisfied with how Mr. Lippold and other members of the management team, including Mr. Hastings, treated the employees who reported to them and ran the warehouse. [See, e.g., Filing No. 30-1, at ECF p. 21-22; Filing No. 30-1, at ECF p. 23; Filing No. 30-1, at ECF p. 24; Filing No. 30-1, at ECF p. 26-27.]

As a result of her investigation, Mr. Stacy decided that four members of the management team should be terminated: Mr. Hastings, Mr. Lippold, Mr. Harris and Mr. Arney. [Filing No. 30-2, at ECF p. 7.] Although SMC has an official Corrective Action Process to address employee performance concerns, [Filing No. 32-2, at ECF p. 11], it made clear that "serious misconduct could result in immediate termination," [Filing No. 32-3, at ECF p. 13]. Thus even though Mr. Hastings had no prior disciplinary issues in his file, [Filing No. 32-2, at ECF p. 6], his employment was immediately terminated on January 11, 2012, [Filing No. 32-2, at ECF p. 23].

Relevant to Mr. Hastings' ADEA claim are the ages of the individuals at the time of their termination: Mr. Hastings (age 60), Mr. Lippold (age 43), Mr. Harris (age 57), and Mr. Arney

(age 39).  [Filing No. 30-3, at ECF p. 2.]  Ms. Stacy decided not to terminate the three remaining supervisors—Todd Bookhalter (age 40), Mike Myers (age 44), and Henry Vu (age "around 30"), [Filing No. 32-3, at ECF p. 4; Filing No. 30-1, at ECF p. 32]—because she did not believe her investigation revealed that they were part of the problem.  [Filing No. 30-2, at ECF p. 7.]  The manager of distribution position vacated by Mr. Lippold was not filled following his termination, as the job responsibilities associated with that position were taken over by another SMC employee who was over the age of forty.  [Filing No. 30-1, at ECF p. 28.]  Three other SMC employees were promoted to fill the three vacant supervisor positions: Emmett Flores (age 36), Ronald Moss (age 61), and Tahir McCullough (age 32).  [Filing No. 32-3, at ECF p. 4.]

Following his termination, Mr. Hastings contacted the Equal Employment Opportunity Commission ("EEOC") and alleged SMC discriminated against him due to his race and age. [Filing No. 30-1, at ECF p. 63-64.]  The EEOC issued Mr. Hastings a right to sue letter on June 27, 2012, and this lawsuit followed.  [Filing No. 1, at ECF p. 1.]

### III.
#### DISCUSSION

Mr. Hastings originally asserted claims of race and age discrimination, as well as several state law claims.  [Filing No. 1.]  Defendants filed the instant motion seeking summary judgment on all of Mr. Hastings' claims.  [Filing No. 28.]  In response to Defendants' motion, Mr. Hastings explicitly abandoned all of his claims except for his age discrimination claim.  [Filing No. 31, at ECF p. 2 ("[Mr.] Hastings is no longer pursuing race discrimination nor state law claims.").]  Summary judgment in favor of Defendants is therefore warranted on all of the abandoned claims, leaving only Mr. Hastings' age discrimination claim for the Court to consider.

Mr. Hastings was sixty years old when terminated by SMC.  [Filing No. 30-3, at ECF p. 2.]  The ADEA makes it unlawful for an employer to discharge an employee due to that

individual's age.  *See* 29 U.S.C. § 623(a)(1).  "[A] plaintiff bringing a disparate-treatment claim

pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for'

cause of the challenged adverse employment action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S.

167, 180 (2009).  Therefore, for his ADEA claim to survive summary judgment, Mr. Hastings

must adduce "evidence that could support a jury verdict that age was a but-for cause of the

employment action at the summary judgment stage."  *Fleishman v. Continental Cas. Co.*, 698

F.3d 598, 604 (7th Cir. 2012).  The but-for standard adopted in *Gross*, however, does not change

the familiar *McDonnell Douglas* framework used at summary judgment.  *See id.*  Indeed,

plaintiffs such as Mr. Hastings who seek to prove their ADEA claims under the indirect method

of proof still do so pursuant to the *McDonnell Douglas* framework.  *See id.* ("[The Seventh

Circuit] ha[s] continued to apply the *McDonnell Douglas* burden-shifting framework in summary

judgment cases that proceed under the indirect method of proof.").

     To survive summary judgment using the indirect method,[3] the plaintiff must first set forth

a *prima facie* case of discrimination, which requires a showing that: "(1) he was over forty years

---

[3] Mr. Hastings briefly argues that he may also proceed under the direct method.  [Filing No. 31, at ECF p. 21-22.]  But his arguments and evidence in support of the direct method are merely a summary restatement of the contentions and evidence from the indirect method section of his brief.  [Filing No. 31, at ECF p. 22.]  The direct method requires a plaintiff to offer "direct evidence of animus—the so-called 'smoking gun.'"  *Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010).  This "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) (citations and quotation marks omitted).  "A plaintiff can also prevail under the direct method of proof by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003) (citation and quotation marks omitted).  "That circumstantial evidence, however, 'must point directly to a discriminatory reason for the employer's action.'"  *Id.* (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)).  As discussed in detail below, Mr. Hastings contentions are insufficient under the indirect method and thus certainly do not create a convincing mosaic of circumstantial evidence permitting an inference of intentional discrimination.  Nor is there evidence of anything remotely close to an admission by any of the Defendants that Mr. Hastings' age factored into the decision

of age; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably." *Franzoni v. Hartmax Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002); *see* *Andrews v. CBOCS West, Inc.*, --- F.3d ----, 2014 WL 575893, *3 (7th Cir. 2014). "If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Andrews*, 2014 WL 575893, at *3.

### A. *Prima Facie* Case

The Court begins with the parties' respective positions regarding the *prima facie* case. Defendants contend that Mr. Hastings cannot make out a *prima facie* case of age discrimination. As an initial matter, it is undisputed that the first and third elements of the *prima facie* case are met: the ADEA protects individuals "who are at least 40 years of age," 29 U.S.C. § 631(a), which Mr. Hastings is, [Filing No. 30-3, at ECF p. 2], and termination of one's employment undoubtedly constitutes an adverse employment action, *Andrews*, 2014 WL 575893, at *4 ("Termination of employment is obviously . . . a materially adverse employment action.") Defendants, however, contest the other two elements—whether Mr. Hastings was meeting SMC's legitimate performance expectations and whether there are similarly situated younger employees who were treated more favorably. [Filing No. 29, at ECF p. 11-12; Filing No. 29, at ECF p. 13-17.]

---

to terminate his employment. Accordingly, Mr. Hastings cannot proceed under the direct method.

Turning first to SMC's legitimate performance expectations, Defendants maintain that Mr. Hastings failed to meet them, as he was "specifically identified by employees as a poster-child for the dysfunction in the warehouse." [Filing No. 29, at ECF p. 11.] In response, Mr. Hastings acknowledges that SMC informed him that his termination was due to his "unsatisfactory performance"—specifically, "it was the result of comments allegedly made by employees who were interviewed by [Ms.] Stacy." [Filing No. 31, at ECF p. 15.] Indeed, Mr. Hastings seemingly does not dispute that numerous employees complained to Ms. Stacy that the management team (of which he was a part) demonstrated "[f]avortism and cronyis[m]" and singled out college students "for harsh and unprofessional treatment."[4] [Filing No. 31, at ECF p. 16.] However, Mr. Hastings argues that the all seven supervisors on the management team were implicated in the behavior for which he was terminated, yet three of them—all of whom are younger than Mr. Hastings—were not terminated. [Filing No. 31, at ECF p. 2 ("[Ms. Stacy's] interviews revealed that supervisors significantly younger than [Mr.] Hastings contributed to the same problems for which [Mr.] Hastings was accused, but they were not terminated."); Filing No. 31, at ECF p. 16 (arguing that "[Mr.] Bookhalter and [Mr.] Myers are significantly younger than [Mr.] Hastings" but "were not terminated" even though they too "were implicated in general mismanagement").] When a plaintiff such as he attempts to show discrimination by proving that

_____

[4] To the extent Mr. Hastings attempts to cast doubt on whether his job performance was inadequate by highlighting that SMC reached that conclusion based on subjective interviews rather than objective performance ratings, this does not advance his claim. [Filing No. 31, at ECF p. 15 ("[Mr.] Hastings alleged unsatisfactory performance was not due to any objective standard or poor evaluation; it was the result of comments allegedly made by employees who were interviewed by [Ms.] Stacy.").] Employers are not required to utilize objective performance measures to conclude that an employee is not meeting expectations; subjective determinations are sufficient. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) ("[A] subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas . . .* analysis."); *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1427 (7th Cir. 1986) ("A subjective qualification assessment does not convert an otherwise legitimate reason into an illegitimate one.").

he was disciplined more harshly than younger employees for engaging in the same conduct, says Mr. Hastings, the Court need not examine whether he was meeting SMC's legitimate performance expectations. [Filing No. 31, at ECF p. 17 (citing *Curry v. Menard*, 270 F.3d 473, 477-78 (7th Cir. 2001)).]

The Court agrees with Mr. Hastings that the analysis of whether he was meeting SMC's legitimate performance expectations is unhelpful at this stage. The Seventh Circuit has stressed that the *McDonnell Douglas* analysis is a "flexib[le]" one. *Curry*, 270 F.3d at 477. When the issue, as it is here, is "whether the employer applied its legitimate employment expectations in a discriminatory manner[,] . . . 'it makes little sense in this context to discuss whether []he was meeting h[is] employer's reasonable expectations.'" *Elkhatib v. Dunkin Dounts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007) (quoting *Curry*, 270 F.3d at 477). Instead, the "second and fourth prongs [of the *prima facie* case] merge," which "leads to the issue of whether there were similarly-situated individuals not in the protected class who were treated differently." *Id.*

Turning to the similarly-situated inquiry, Mr. Hastings points to two younger supervisors: Mr. Myers and Mr. Bookhalter. [Filing No. 31, at ECF p. 18.] Specifically, he contends that they, like him, were "supervisors in the logistics department," and "engaged in the same misconduct." [Filing No. 31, at ECF p. 18.] Defendants explain in detail how, in their view, Ms. Stacy's interviews revealed that Mr. Hastings' culpability regarding the dysfunction in the warehouse was categorically worse than Mr. Myers' or Mr. Bookhalter's, precluding Mr. Hastings from being similarly situated with them. [Filing No. 35, at ECF p. 5-8.] But more importantly, Defendants argue that, one way or another, Mr. Hastings "has to present evidence to support a reasonable inference of discrimination," and when Ms. Stacy's decision regarding

which employees would be terminated or retained is examined, no such inference can be drawn. [Filing No. 35, at ECF p. 4-5.]

Defendants are right to focus on the core purpose of plaintiff's burden to establish the *prima facie* case—namely, "to raise the specter of discrimination, justifying judgment for the plaintiff if the employer does not provide a legitimate business reason for its action." *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008). The *prima facie* case does raise the specter of discrimination because, "[a]ll things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Id.* The similarly situated prong's role in this scheme is to determine "whether all things are in fact equal." *Id.* It does so by "eliminat[ing] other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable—discriminatory animus." *Coleman v. Donahue*, 667 F.3d 835, 846 (7th Cir. 2012) (citations and quotation marks omitted); *see id.* ("[T]he question is whether members of the comparison group are sufficiently comparable to [the plaintiff] to suggest that [the plaintiff] was singled out for worse treatment.") (citations and quotation marks omitted).

To adequately isolate the key variable of discriminatory animus, the specific comparators to which the plaintiff points must constitute "a representative sample of all the workers who are comparable to [the plaintiff]"—which is to say, the plaintiff "must not pick and choose." *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006). Yet this is precisely what Mr. Hastings has done. Recall that there were seven supervisors at the time of Ms. Stacy's investigation, four she terminated—Mr. Hastings (age 60), Mr. Lippold (age 43), Mr. Harris (age 57), and Mr. Arney (age 38)—and three she retained—Mr. Myers (age 44), Mr. Bookhalter (age

40), and Mr. Vu (around the age of 30). [Filing No. 30-3, at ECF p. 2; Filing No. 32-3, at ECF p. 4; Filing No. 30-1, at ECF p. 32.] Mr. Hastings contends that all of the management team participated in the unsatisfactory conduct, [Filing No. 31, at ECF p. 16], but to create an inference of age-based discrimination, he relies primarily on the fact that Mr. Myers and Mr. Bookhalter were not terminated while he was, [*see, e.g.*, Filing No. 31, at ECF p. 16-17]. The Court will not, however, allow Mr. Hastings to "pick and choose" the comparators from the relevant comparison group (the seven supervisors) that help his case and ignore the ones that do not. *Crawford*, 461 F.3d at 846.

Were Mr. Hastings permitted to pick and choose the comparators the Court could consider, by defining the relevant comparison group as including only himself (age 60), Mr. Myers (age 44), and Mr. Bookhalter (age 40), Mr. Hastings could plausibly isolate age as the only material difference between those who terminated and those who were not. In other words, assuming that their conduct and all other material factors were "equal, . . . once [could] infer discrimination." *Filar*, 526 F.3d at 1061; *see Perez v. Thorntons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013).

This inference cannot be drawn, however, when considering the entire comparison group. Of the seven supervisors, the two oldest (Mr. Hastings and Mr. Harris), the fourth oldest (Mr. Lippold), and the sixth oldest (Mr. Arney) were terminated, while the third oldest (Mr. Myers), the fifth oldest (Mr. Bookhalter), and the seventh oldest (Mr. Vu) were retained. [*See* Filing No. 30-3, at ECF p. 2; Filing No. 32-3, at ECF p. 4; Filing No. 30-1, at ECF p. 32.] When the comparison group is examined in these terms, no clear age divide emerges such that an inference of age discrimination can be drawn. In fact, the relative ages of the terminated and retained supervisors are close to evenly distributed, save the fact that the two oldest were both terminated.

Such a distribution does not permit an inference that Defendants desired to terminate older employees. Further undercutting such an inference are the ages of the three SMC employees promoted to replace the terminated employees—Mr. Moss (age 61), Mr. Flores (age 36), and Mr. McCullough (age 32). [Filing No. 32-3, at ECF p. 4; Filing No. 30-1, at ECF p. 32] Although two of the promoted employees are relatively young, Mr. Moss was older than all seven original supervisors, including Mr. Hastings. In sum, as Defendants rightly contend, Mr. Hastings' "theory of an ageist purge is a non-starter because the ages of the supervisors who were dismissed, retained, or promoted fail to show any pattern of age discrimination." [Filing No. 35, at ECF p. 4.]

The Court recognizes that a plaintiff's task of establishing a *prima facie* case is "'not onerous.'" *Coleman*, 667 F.3d at 846 (quoting *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Indeed, "the plaintiff's evidence on the prima facie case need not be overwhelming or even destined to prevail; rather, the plaintiff need present only some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 406-07 (7th Cir. 2007) (quoting *Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000)) (quotation marks omitted); *see id.* at 406 ("[T]he [similarly-situated] inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation."). But Mr. Hastings has simply failed to overcome this low bar. His entire theory of discrimination is that Ms. Stacy's "interviews revealed that supervisors significantly younger than [Mr.] Hastings contributed to the

same problems for which [Mr.] Hastings was accused, but they were not terminated."[5]  [Filing No. 31, at ECF p. 2.]  However, a "representative sample of all the workers who are comparable to [Mr. Hastings]," *Crawford*, 461 F.3d at 846, reveals no discernable pattern of age discrimination.  Accordingly, Mr. Hastings has not provided sufficient evidence "from which one can infer that the employer took adverse action against [him] on the basis of [his age]." *Humphries*, 474 F.3d at 406.  For this reason, Defendants are entitled to summary judgment on Mr. Hastings' ADEA claim.

---

[5] Defendants vigorously contest Mr. Hastings' position that the three retained supervisors engaged in equally culpable conduct as those that were fired. [*See* Filing No. 35, at ECF p. 5-8.] For example, Defendants point to undisputed evidence that the four terminated supervisors were the ones who targeted Ms. Stacy's son and falsely accused him of entering into unauthorized portions of the warehouse.  [Filing No. 30-2, at ECF p. 8-9.]  Moreover, Mr. Hastings was complicit in what Ms. Stacy believed to be Mr. Harris' racially hostile "where's your monkey at" comment.  [Filing No. 30-2, at ECF p. 4-5.]  Such instances, among the others detailed by Defendants, [*see* Filing No. 35, at ECF p. 6-7], could easily explain Ms. Stacy's decision to terminate the four supervisors she did and retain the three others.  Indeed, Ms. Stacy explicitly testified at her deposition that she thought the four supervisors she terminated contributed to the leadership problems at the warehouse, while the three that were retained did not.  [Filing No. 30-2, at ECF p. 7.]

This undisputed evidence could very well preclude Mr. Hastings from proving that any of the retained supervisors, all of whom are younger than him, were similarly situated.  However, the Court need not ultimately decide this because, to prove a *prima facie* case, Mr. Hastings must "present . . . some evidence from which one can infer that the employer took adverse action against [him] on the basis of [his age]." *Humphries*, 474 F.3d at 406-07 (citation and quotation marks omitted).  Because no inference of age-based discrimination can be drawn from the age-pattern of those terminated compared to those retained, there is no evidence that Ms. Stacy's decision was motivated by age.  As discussed further below, whether this conclusion is more appropriately reached at the *prima facie* stage or at the pretext is irrelevant to the Court's ultimate conclusion—namely, that Mr. Hastings lacks evidence that his termination was related to his age and that therefore summary judgment in Defendants' favor is proper.

### B. Pretext

Although the Court has already held that Mr. Hastings' *prima facie* case is insufficient to survive summary judgment, summary judgment could instead be granted in Defendants' favor at the pretext stage. As is now well clear, Defendants' legitimate, non-discriminatory reason for terminating Mr. Hastings was that Ms. Stacy's interviews revealed that Mr. Hastings' (and others') performance was unsatisfactory and led to "dysfunction in the warehouse." [Filing No. 29, at ECF 11-12.] To establish that Defendants' justification was pretextual, Mr. Hastings advances two arguments. First, he contends that pretext is demonstrated by the fact that Defendants misled the EEOC regarding the number of supervisors at the warehouse—stating that there were only the four that were terminated. [Filing No. 31, at ECF p. 20.] Second, he relies on the same reasoning discussed above with respect to his *prima facie* case—namely, that if unsatisfactory job performance was "the real reason, [Mr.] Bookhalter and [Mr.] Myers would also have been terminated because [Ms.] Stacy's notes of the interview implicated all supervisors including [Mr.] Bookhalter and [Mr.] Myers." [Filing No. 31, at ECF p. 20.]

To carry his burden at the pretext stage, Mr. Hastings "must offer evidence supporting an inference that [Defendants'] non-discriminatory reason for [his] termination . . . was a pretext for illegal discrimination." *Perez*, 731 F.3d at 708. This evidence "must . . . suggest[] that the employer is dissembling." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "Where, as here, the employer contends that the plaintiff's job performance was wanting, the plaintiff must do more than dispute the validity of the employer's criticisms. The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Id.*; *Stockwell v. Harvey*,

597 F.3d 895, 902 (7th Cir. 2010) ("[E]ven if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason.").

Beginning with Mr. Hastings' first argument, it is insufficient to establish pretext. He argues that pretext is demonstrated by the fact that Defendants led "the EEOC to believe [SMC] terminated the entire logistics management team" by telling the EEOC in their position statement that the team "consisted of only four individuals—Hastings, Lippold, Harris and Arney." [Filing No. 31, at ECF p. 20.] By not informing the EEOC that the team "consisted of seven individuals," says Mr. Hastings, "Defendant[s] withheld from the EEOC that [they] terminated the three oldest management team member[s], but retained three of the youngest." [Filing No. 31, at ECF p. 20.] According to Mr. Hastings, Defendants' failure to disclose the three members of the team SMC retained "cast[s] doubt on the veracity of [its] reasons for terminating [Mr.] Hastings." [Filing No. 31, at ECF p. 20.] Notably, however, Mr. Hastings fails to cite any authority supporting his position. As Defendants note in response, establishing pretext requires Mr. Hastings to establish that the "non-discriminatory reason for [his] termination . . . was a pretext for illegal discrimination," *Perez*, 731 F.3d at 708, but, Defendants say, "the purported lie that [Mr.] Hastings seeks to cast suspicion on—the identities of the warehouse managers as set out in SMC's position statement—does not cast doubt on the reason why [Mr.] Hastings was terminated." [Filing No. 35, at ECF p. 9.]

The Court agrees with the Defendants. Their non-discriminatory reason for Mr. Hastings' termination (unsatisfactory job performance) has remained consistent, cutting against any inference that it is pretextual. [*See* Filing No. 35, at ECF p. 9.] Moreover, Defendants' misstatement to the EEOC regarding the members of the management team alone could not create such an inference because—contrary to Mr. Hastings' position otherwise and as discussed

at length herein—no pattern of age discrimination appears even when considering all seven members of the management team. A reasonable jury could not infer from Defendants' failure to mention three members of the management team to the EEOC that Defendants were making a calculated attempt to hide a pattern of age discrimination, as no such pattern exists. Therefore, Defendants' misstatement to the EEOC in no way permits an inference that its reason for terminating Mr. Hastings' was a lie.

Mr. Hastings' alternative pretext argument falters for the same reasons discussed above regarding his *prima facie* case. He argues that unsatisfactory job performance was not the true reason for his termination, his advanced age was, and says that this is evinced by the fact that Mr. Hastings was terminated while younger supervisors were retained. [*See* Filing No. 31, at ECF p. 19-20.] But as explained above, Ms. Stacy's decision, considered in its entirety, does not reveal a pattern of age discrimination. Of the seven supervisors, SMC terminated the first, second, fourth and sixth oldest, and retained the third, fifth, and seventh oldest. [*See* Filing No. 30-3, at ECF p. 2; Filing No. 32-3, at ECF p. 4; Filing No. 30-1, at ECF p. 32.] Such an age distribution among both the supervisors that were terminated and those that were retained is not an indication of age discrimination. *Cf.* King v. Acosta Sales & Mktg., Inc., 678 F.3d 470, 473-75 (7th Cir. 2012) (holding that an inference of sex discrimination could be drawn based on "striking" difference in pay between male and female employees; of twenty employees—twelve men and eight women—"[a]ll of the men were paid more than all but one of the women and that one woman achieved her $60,000 salary only after six years on the job, while men exceeded the $60,000 line faster").

If Defendants were motivated by age,[6] "[o]ne would expect [all of the older employees] to have been fired." *Hester v. Ind. State Dep't of Health*, 726 F.3d 942, 948 (7th Cir. 2013). The fact that they were not "cuts against [Mr. Hastings'] allegations of age . . . discrimination." *Id.* To be sure, more older supervisors were terminated than younger ones. But the third oldest supervisor (Mr. Myers) was retained and the second youngest (Mr. Arney) was terminated,[7] precluding an inference that SMC's decision was based on age. *Cf. Crawford*, 461 F.3d at 845 ("[T]he fact that 'only' 83 percent of the 'bad' white men"—as opposed to "100 percent of the 'bad' black female workers"—were fired does not support an inference that the defendant treats white men better than black women."). Moreover, one of the terminated supervisors was replaced by Mr. Moss, who was older than all of the seven original supervisors, [Filing No. 32-3, at ECF p. 4], further undercutting any inference of age discrimination. *Cf. La Montagne v. Am. Convenience Prods., Inc.*, 750 F.2d 1405, 1413 (7th Cir. 1984) ("A reasonable jury could not believe both that [the employer] wanted to replace [the plaintiff] with a younger man and that [the employer's] first choice for the replacement was Sutton. Even though Sutton was "younger"

_____

[6] Even if Ms. Stacy decided to terminate Mr. Hastings based on "nepotism," as Mr. Hastings alleged, [Filing No. 30-1, at ECF p. 67], such decision-making is not related to age and thus not actionable under the ADEA. *See, e.g.*, *Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 733 (7th Cir. 2002) ("Whether the employer grants employment perks to an employee because she is a protegé, an old friend, a close relative or a love interest, that special treatment is permissible as long as it is not based on an impermissible classification.").

[7] Mr. Hastings states that "[Mr.] Arney had a history of serious misconduct," including that in 2011 he "was written up for sexual harassment and a few months later he was again written up for disrespectful conduct." [Filing No. 31, at ECF p. 20.] Although not explicitly stated, the Court assumes that Mr. Hastings points this out in an attempt to explain why one of the younger supervisors was terminated. But Mr. Hastings does not point to any evidence that Mr. Arney's prior conduct was taken into consideration by Ms. Stacy in deciding that his employment should be terminated. Indeed, the undisputed evidence leads to the opposite conclusion—namely, that Mr. Arney and the three other terminated supervisors were terminated as a result of Ms. Stacy's investigation because they contributed to the dysfunctional leadership at the warehouse. [Filing No. 30-2, at ECF p. 7 (deposition testimony of Ms. Stacy, explaining that she terminated the four supervisors in question because she "needed to restructure what was broken out there").]

(by 4 years), he was too close in age to [the plaintiff] to be the first choice when youth is a prime desideratum."). Again, to be sure, two of the terminated supervisors were replaced by significantly younger SMC employees, [Filing No. 32-3, at ECF p. 4], but "the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination." *La Montagne*, 750 F.2d at 1413.[8]

This would perhaps be a different case had Defendants terminated the four oldest supervisors, retained the three youngest, and promoted uniformly younger supervisors to replace the terminated ones. *Cf. King*, 678 F.3d at 473-75. But that is not what occurred. Therefore, Mr. Hastings' reliance on the age distribution of those terminated and those retained does not permit an inference that age motivated SMC's decision to terminate Mr. Hastings, as opposed to Defendants' view that his job performance was unsatisfactory.

In conclusion, the Court wishes to highlight that, even though the case proceeded almost exclusively under the indirect method, the "snarls and knots" of the *McDonnell Douglas* framework still unnecessarily complicated the case. *Coleman*, 667 F.3d at 863 (Wood, J., concurring). One could reasonably argue that Mr. Hastings' claim fails at either the *prima facie* stage or the pretext stage; but whichever is more appropriate, it is clear that he has no evidence of age discrimination. As Judge Wood's concurrence in *Coleman* suggests, "we would be better served at this time by 'collaps[ing] all these tests,' into a single, unified approach that distills the core issue at the heart of these cases: whether 'a rational jury could conclude that the employer

---

[8] Mr. Hastings contends that Mr. Moss' employment history with SMC demonstrates that SMC considers "age [as] a factor in [their] personnel decisions." [Filing No. 31, at ECF p. 21.] This is so, says Mr. Hastings, because "[Mr.] Moss had been passed over several times for significantly younger individuals" including "[Mr.] Bookhalter who is forty" and "[Mr.] Arney who was 38 years old at the time of [Mr.] Hastings' termination." [Filing No. 31, at ECF p. 21.] But without more, evidence that SMC selected a younger person over Mr. Moss for a promotion does not create an inference of age discrimination. *See La Montagne*, 750 F.2d at 1413.

took that adverse action on account of [the employee's] protected class [or activity], not for any non-invidious reason.'" *Harper v. C.R. England, Inc.*, 687 F.3d 297, 313 (7th Cir. 2012) (alterations in original) (quoting *Coleman*, 667 F.3d at 863 (Wood, J., concurring)); *see also Hester*, 726 F.3d at 946. Viewing the facts through this much clearer lens, it is readily apparent that Mr. Hastings' ADEA claim cannot survive summary judgment. He has no direct evidence of age discrimination, and, for all the reasons discussed above, his attempts to show a pattern of age discrimination fall flat, as no such pattern exists. A rational jury would therefore be left with no evidence from which it could infer Mr. Hastings' age contributed to Defendants' decision to terminate him. Accordingly, under this method too, Defendants are entitled to summary judgment on Mr. Hastings' ADEA claim.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. [Filing No. 28.] Judgment will enter accordingly.

**<u>Distribution via ECF only</u>:**

David L. Swider
BOSE MCKINNEY & EVANS, LLP
dswider@boselaw.com

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP
pzimmerly@boselaw.com

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@swh-law.com